**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **Irene Akinsinde,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Not-For-Profit Hospital Corporation,** )<br>)<br>**Defendant.** )<br>) | Civil No. 16-cv-00437 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Plaintiff Irene Akinsinde is a nurse who worked in the psychiatric ward of Defendant Not-For-Profit Hospital Corporation for eleven years. She brings this lawsuit seeking redress for two general categories of alleged misconduct. First, Plaintiff claims that Defendant failed to pay her overtime, as required by federal and District of Columbia law, during her entire tenure as Defendant's employee. As to those acts of non-payment, Plaintiff advances three separate claims under the federal Fair Labor Standards Act (Count I), the D.C. Minimum Wage Revision Act (Count II), and the D.C. Wage Payment and Collection Law (Count III). Second, Plaintiff alleges that her immediate supervisor—motivated by personal animosity—falsely accused her of discarding a patient's medications, which ultimately resulted in Plaintiff's termination. As to that conduct, Plaintiff raises a single common law tort claim for negligent supervision (Count IV).[1]

---

[1] With respect to her firing, Plaintiff also originally advanced claims of fraud (Count V) and intentional interference with prospective advantage (Count VI). However, Plaintiff subsequently abandoned those claims. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 9, at 12.

Defendant has moved to dismiss all claims. Specifically, it contends that each of Plaintiff's claims must be dismissed for two main reasons: (1) Plaintiff failed to serve Defendant with timely notice of her claims under D.C. Code § 44-951.14(d); and (2) Plaintiff failed to plead sufficient facts to give rise to a plausible claim for relief as to each of her claims.

For the reasons explained below, Defendant's Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff Irene Akinsinde is a licensed practical nurse. First Am. Compl., ECF No. 6 [hereinafter Am. Compl.], ¶ 8. Since 2004, she has worked in the psychiatric ward of Defendant Not-For-Profit Hospital Corporation's hospital, now known as United Medical Center. *Id.* When Plaintiff began her work at the hospital, it was privately owned and operated. However, in 2011, the District of Columbia government created Defendant as "an instrumentality of the District government" for the purpose of acquiring the hospital's assets and continuing its operations. *See* D.C. Code § 44-951.02. Thus, Defendant is an arm of the District government, albeit one with "a separate legal existence." *Id.* § 44-951.02(a).

According to Plaintiff, Defendant's policies allowed hospital staff members who worked an eight-hour shift to take two unpaid 15-minute breaks and one unpaid 30-minute meal break. Am. Compl. ¶ 9. Due to chronic understaffing in the psychiatric ward, however, Plaintiff "routinely worked the entire day . . . without taking a break" and she was not paid for these additional hours of work. *Id.* ¶¶ 14–15. Moreover, Plaintiff avers that she did not receive an overtime rate of pay for the work she did in excess of 40 hours. *Id.* ¶¶ 18, 33. Plaintiff claims that such nonpayment and underpayment occurred "during the entire time that she was employed by [D]efendant." *Id.* ¶ 16.

At some unspecified time, Grea Neverson-Daniels became Plaintiff's supervisor. *Id.* ¶ 21. Plaintiff knew Neverson-Daniels's husband before he married Neverson-Daniels, causing friction between Plaintiff and her supervisor. *Id.* Plaintiff complained to a Human Resources officer, Jennifer Dupree, about her mistreatment by Neverson-Daniels, but no one took corrective action. *Id.* ¶¶ 22–23. Tensions continued to escalate between Plaintiff and Neverson-Daniels, culminating in Neverson-Daniels falsely accusing Plaintiff of discarding a patient's medications. *Id.* ¶ 24. According to Plaintiff, "neither the Director of Human Resources or any other . . . supervisors took it upon themselves to investigate and intervene," despite evidence of Plaintiff's innocence—she was not at work on the day in question. *Id.* ¶¶ 24–25. Although "preposterous and false," Neverson-Daniels's accusation caused Plaintiff to be fired on March 9, 2015. *Id.* ¶ 25.

### B.     Procedural History

Plaintiff originally brought this case in D.C. Superior Court on February 17, 2016, after which Defendant removed it to this court. *See* Notice and Pet. for Removal, ECF No. 1, at 1. Plaintiff then filed an Amended Complaint. *See* Am. Compl. Defendant's Motion to Dismiss the Amended Complaint is now before the court and ripe for consideration. *See* Def.'s Second Mot. to Dismiss, ECF No. 8 [hereinafter Def.'s Mot.].[2]

## III.    LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United*

---

[2] Defendant's original motion to dismiss was rendered moot by Plaintiff filing her First Amended Complaint. *See* Def.'s Mot. to Dismiss, ECF No. 5; *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 117 (D.D.C. 2014) ("When a plaintiff files an amended complaint as of right . . . the amended complaint becomes the operative pleading . . . and any pending motion to dismiss becomes moot." (citation omitted)).

*States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true either "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

**IV.   DISCUSSION**

The court first considers Defendant's contention that each of Plaintiff's claims must be dismissed because she has failed to provide notice of her claims in advance of filing suit, as required by D.C. Code § 44-951.14(d). Having concluded that Plaintiff did provide proper notice, the court then turns to Defendant's arguments concerning the sufficiency of Plaintiff's pleading.

### A. Whether Plaintiff Has Satisfied the Notice Requirement of D.C. Code § 44-951.14(d).

Section 44-951.14(d) of the D.C. Code provides:

> An action other than an action for medical negligence or malpractice may not be maintained against the [Not-For-Profit Hospital] Corporation for unliquidated damages to persons or property unless, within 6 months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the CEO of the approximate time, place, cause, and circumstances of the injury or damage.

Neither side has cited any case—either within this Circuit or from the D.C. Court of Appeals—interpreting Section 44-951.14(d), and this court likewise has found none. Thus, the scope and meaning of Section 44-951.14 are issues of first impression.

The plain language of Section 44-951.14 sets out a rule and its exceptions: a plaintiff cannot sue Defendant for unliquidated damages unless (1) the suit is one for medical negligence or malpractice or (2) the plaintiff provided written notice to Defendant within six months of her injury. To fall under the second exception, a plaintiff's notice must contain the time, place, cause, and circumstances of her injury. *See* D.C. Code § 44-951.14(d). Defendant characterizes this rule as a limited waiver of sovereign immunity. Thus, Defendant argues, Plaintiff's failure to satisfy the waiver conditions deprives the court of subject matter jurisdiction over Plaintiff's claims. *See* Def.'s Mot., Def.'s Mem. of Law, ECF No. 8-1 [hereinafter Def.'s Mem.], at 3–5. For the reasons that follow, Defendant's argument misses the mark.

The Supreme Court has held that when two statutes contain the same language, it is a strong indication that they "should be interpreted *pari passu*," that is, on equal footing.[3] *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam); *cf. Merrill Lynch,*

---

[3] *Pari passu*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("[p]roportionally; at an equal pace; without preference").

*Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well." (alteration in original) (internal quotation marks omitted)).  Section 44-951.14(d) parallels another, more familiar notice-of-claim requirement under District of Columbia law—that contained in D.C. Code § 12-309.  Section 12-309 provides that:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

The textual parallels between Sections 44-951.14(d) and 12-309 are evident.  Both require potential plaintiffs, as a precondition to filing suit, to provide written notice of claims for unliquidated damages within six months of injury or damage, and that such notice describe the approximate time, place, cause, and circumstances of the injury or damage.  Therefore, the court—as the parties themselves have—will look to cases interpreting Section 12-309's notice requirement when applying Section 44-951.14(d) in this case.

Our Court of Appeals has held—contrary to Defendant's assertion—that Section 12-309's notice requirement is not jurisdictional.  In *Dellums v. Powell*, the Court explained that "failure to give Section [12-]309 notice is [not] a jurisdictional bar to suit[;] if such failure is not asserted as an affirmative defense it is waived."  566 F.2d 216, 229 (D.C. Cir. 1977).  Furthermore, courts in this District have rejected efforts to characterize Section 12-309 as a waiver of sovereign immunity and non-compliance with the statute as divesting the court of subject matter jurisdiction.  *See, e.g.*, *Williams v. Johnson*, 794 F. Supp. 2d 22, 28–29 (D.D.C. 2011) (observing that "pre-suit notice requirement is *not* a waiver of sovereign immunity"); *Sharma v. District of Columbia*, 791 F. Supp.

2d 207, 213 (D.D.C. 2011); *R. v. District of Columbia*, 370 F. Supp. 2d 267, 270 (D.D.C. 2005); *cf. Lerner v. District of Columbia*, 362 F. Supp. 2d 149, 166 (D.D.C. 2005) ("The defense of failure to comply with D.C. Code § 12-309 is, like qualified immunity and the statute of limitations, an affirmative defense.").

Nor has the D.C. Court of Appeals characterized Section 12-309 as jurisdictional. Rather, looking to the statute's legislative history, that court has observed that the notice provision's purpose is to protect the District's treasury. As the D.C. Court of Appeals stated in *George v. Dade*, Congress enacted the notice provision "to make certain that the District received notice of potential claims within six months of the injury, or damage, to ensure adequate opportunity for investigation to determine facts, and to protect District revenues against unreasonable claims." 769 A.2d 760, 765 (D.C. 2001); *accord Owens v. District of Columbia*, 993 A.2d 1085, 1088 (D.C. 2010) (describing the purposes of Section 12-309 as "(1) permit[ting] the District of Columbia to conduct an early investigation into the facts and circumstances surrounding a claim, (2) protect the District of Columbia against unreasonable claims, and (3) encourage prompt settlement of meritorious claims."); *see also Brown v. United States*, 742 F.2d 1498, 1502 (D.C. Cir. 1984) (same). Moreover, in *Tucci v. District of Columbia*, the D.C. Court of Appeals made clear that Section 12-309 is "purely a notice provision" and "does not waive sovereign immunity in exchange for timely notice." 956 A.2d 684, 694 (D.C. 2008) (internal quotation marks omitted). Further, the court observed that some federal courts incorrectly "characterized the statute as a waiver of sovereign immunity." *Id.* at 695.

Accordingly, applying the *pari passu* maxim, this court will not read Section 44-951.14(d), as Defendant would, to operate as a conditional waiver of sovereign immunity when courts have held that identical language in another D.C. municipal provision does not operate as a jurisdictional

7

bar.  Correspondingly, the court does not view Plaintiff's alleged noncompliance with Section 44-951.14(d) to divest the court of subject matter jurisdiction over her claims.

With that threshold matter resolved, the court turns to Defendant's contention that Plaintiff has not complied with Section 44-951.14(d).  Defendant initially argued that "[t]he Complaint contains no *factual* allegations whatsoever regarding notice to [Defendant]." Def.'s Mem. at 5.  In her Opposition, however, Plaintiff pointed out that she in fact had alleged service of the required notice, *see* Am. Compl. ¶ 5 ("Notice of this claim was sent on April 8, 2015, to [Defendant's Chief Executive Officer]"), *and* attached a copy of that notice, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 9 [hereinafter Pl.'s Opp'n], Ex. 1, Letter from John F. Pressley, Jr., to David R. Small (Apr. 8, 2015), ECF No. 9-1 [hereinafter Letter from Pressley to Small].  Defendant then modified its argument.  It now argues that "Plaintiff's April 8 letter does not provide the approximate (i) date, (ii) time, (iii) location, (iv) cause, and (v) circumstances giving rise to the four causes of action set forth in the Amended Complaint."  Def.'s Reply in Supp. of its Second Mot. to Dismiss, ECF No. 10 [hereinafter Def.'s Reply], at 9.  More specifically, Defendant asserts that "Plaintiff's letter makes no mention of a claim for unpaid overtime."  *Id.*

The court disagrees with Defendant's contentions.  For starters, with respect to Plaintiff's claim under the Fair Labor Standards Act (Count I), Plaintiff was not required to provide Defendant notice of that claim because it arises under federal law.  *See Brown*, 742 F.2d at 1509–10 (holding that noncompliance with Section 12-309 "cannot bar [the plaintiff's] federal claims"); *Jaiyeola v. District of Columbia*, 40 A.3d 356, 370 & n.65 (D.C. 2012) (stating that "notice-of-claim statutes such as § 12-309 are not borrowed and applied to federal causes of action").

Next, Plaintiff provided sufficient notice, in accordance with Section 44-951.14(d), for her two wage claims based on District of Columbia law (Counts II and III).  Courts have held that

8

compliance with Section 12-309 is "mandatory." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978). Although the notice requirement has been "strictly construed," *id.*, "greater liberality is appropriate with respect to the content of the notice," and courts generally "resolve doubts in favor of finding compliance with the statute," *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995); *see Washington v. District of Columbia*, 429 A.2d 1362, 1365 (D.C. 1981) (en banc) (explaining that, "with respect to the details of the statement (giving notice), precise exactness is not absolutely essential" (internal quotation marks omitted)). "[N]otice under the statute need only 'furnish a reasonable guide for inspection . . . and provide an early warning to District of Columbia officials regarding litigation likely to occur in the future.'" *Wharton*, 666 A.2d at 1230 (alteration in original) (quoting *Gaskins v. District of Columbia*, 579 A.2d 719, 721 (D.C. 1990)). "Simply put, technical imperfection will not deprive a plaintiff of his day in court." *Maddux v. District of Columbia*, 144 F. Supp. 3d 131, 148 (D.D.C. 2015).

Here, Plaintiff substantially—if not fully—complied with Section 44-951.14(d)'s notice requirement. Plaintiff's letter to United Medical Center's Chief Executive Officer stated that, during her eleven years of employment, the psychiatric ward was chronically understaffed and "[o]n occasion she was required to cover the Ward as the sole staff member with 18 psychiatric patients." *See* Letter from Pressley to Small. Plaintiff added that she "was never able to take breaks of any kind during her eleven (11) years of employment with [United Medical Center], in total violation of District of Columbia wage-hour laws. Despite not being able to take breaks, [Plaintiff] was paid as if she had taken breaks." *Id.* Among the kinds of relief she demanded was "backpay for all of the many years that she worked, never taking a break and not be [sic] properly compensated." *Id.* In short, Plaintiff's letter identified every element required under Section 44-951.14(d): the date and time (the duration of her eleven-year employment), the location (the

hospital, specifically the psychiatric ward), the cause of her injury (the nonpayment of wages required by law), and circumstances giving rise to the injury (woeful understaffing that required her to work during unpaid break times). Plaintiff was not required, as Defendant contends, to "detail multiple claims or causes of action or otherwise break out multiples injuries." Def.'s Reply at 9. Such granularity is not necessary.[4]

Finally, in its Reply, Defendant argues for the first time that "Plaintiff can only maintain an action for unpaid overtime compensation allegedly earned during the 6-month period immediately prior to delivery of the letter." *Id.* at 10. The court has no obligation to entertain arguments raised for the first time in a reply brief and declines to do so here.[5] *See Aleutian Pribilof Islands Ass'n v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008). ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief."); *see also McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir.1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair . . . , but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)).

---

[4] The court reads Defendant's Reply to concede that Plaintiff satisfied the notice requirement as to her negligent supervision claim (Count IV). *See* Def.'s Reply at 9 ("Plaintiff's letter raises the issue of Plaintiff's wrongful termination only."). Even if that reading is incorrect, the court independently finds that Plaintiff satisfied Section 44-951.14(d) as to that claim.

[5] The court notes, however, that "Section 12-309 is not, and does not function as, a statute of limitations." *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). The two inquiries—whether a plaintiff has complied with the statutory notice requirement and brought suit within the limitations period—are separate and distinct. *See id.* at 1359–61 (declining to apply the discovery rule to Section 12-309).

B.  **Whether Plaintiff Has Sufficiently Pleaded Her Claims**

Next, Defendant argues that each of Plaintiff's claims must be dismissed because she has failed to plead sufficient facts to support a plausible claim for relief. The court addresses the sufficiency of Plaintiff's pleading as to each claim, in turn.

1.  *Plaintiff's FLSA Claim (Count I)*

Defendant first argues that Plaintiff's FLSA claim seeking unpaid overtime wages must fail because "the complaint must include specific facts regarding the hours actually worked by the plaintiff and the wages actually paid to the plaintiff." Def.'s Mem. at 6. It further contends that Plaintiff's pleading is deficient because "[n]otably absent from the Amended Complaint[] is any date or other factual allegation regarding a specific workweek when Plaintiff worked in excess of forty hours and was not paid overtime due that workweek." Def.'s Reply at 13. The court disagrees with Defendant that Plaintiff was required to plead "the number of hours actually worked by the Plaintiff, the days of the week actually worked by Plaintiff, *and* the weeks she worked overtime" to make out a successful FLSA claim for unpaid overtime wages. Def.'s Mem. at 7 (emphasis added). The court, however, agrees with Defendant that the Amended Complaint does not contain enough specific facts to establish a plausible FLSA claim for unpaid overtime wages, even under the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

The courts in this District consistently have rejected the argument that, to successfully plead an FLSA overtime claim, the plaintiff must specify the number of overtime hours worked for which overtime wages were not received. *See Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 58 (D.D.C. 2012) (stating that "[a]n allegation of a specific number of hours adds nothing as far as the plausibility standard is concerned"); *accord Galloway v. Chugach Gov't Servs., Inc.*, No. 15-cv-979, 2016 WL 4179847, at *3 (D.D.C. Aug. 5, 2016); *Freeman v. MedStar*

*Health, Inc.*, 87 F. Supp. 3d 249, 257 (D.D.C. 2015). Although the D.C. Circuit has not addressed this issue, the circuit courts who have done so have reached the same result. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2015) ("However, like the other circuit courts that have ruled before us, we decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA."); *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241–42 (3d Cir. 2014); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013); *Pruell v. Caritas Christi*, 678 F.3d 10, 13–15 (1st Cir. 2012).

Plaintiff, however, must aver more than "conclusory allegations that merely recite the statutory language." *Landers*, 771 F.3d at 644. To survive a motion to dismiss, the plaintiff must "allege, *with some specificity*, that he worked overtime and did not receive compensation." *Driscoll*, 42 F. Supp. 3d at 58 (emphasis added). Thus, "at a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Landers*, 771 F.3d at 645 (citing *Davis*, 765 F.3d at 242–43; *Lundy*, 711 F.3d at 114; *Pruell*, 678 F.3d at 13).

Applying that standard here, Plaintiff's pleading comes up short because it fails to allege that her uncompensated extra hours resulted in her working more than 40 hours in any given week. Plaintiff avers that, pursuant to "[Defendant's] policy, hospital staff on an eight (8) hour shift could take two (2) fifteen (15) minute breaks and a thirty (3) minute meal period, all non-paid." Am. Compl. ¶ 9. Because of chronic understaffing, she maintains, she "routinely worked the entire day straight . . . without taking a break" and "routinely [was] not paid for the times when [she] actually worked." *Id.* ¶¶ 14–15; *accord id.* ¶ 17 ("[Plaintiff] worked through her breaks and lunch periods on a daily basis during her entire time of her employment with [Defendant]."). She claims that,

"in light of the foregoing, plaintiff not only should have been paid for the time that she worked during the breaks, but she should have been paid at the overtime pay rate for all time worked over 40 hours per week." *Id.* ¶ 18.

Taking these allegations in the light most favorable to Plaintiff, she has alleged, at most, that she worked a single uncompensated hour per day—two 15-minute breaks plus a 30-minute lunch break—in addition to the seven-hour work day for which she was compensated. Nowhere, however, does Plaintiff allege that the additional, uncompensated hour of work caused her to work more than 40 hours per week. Indeed, if Plaintiff worked five seven-hour shifts per week, the uncompensated extra hour per shift would mean that she worked only a 40-hour workweek. Without some facts, Plaintiff's bare assertion that "she should have been paid at the overtime pay rate for all time worked over 40 hours per week" is insufficient to make out a claim under the FLSA. Therefore, the court will grant Defendant's motion to dismiss Plaintiff's FLSA claim.

2. *Plaintiff's D.C. Minimum Wage Revision Act Claim (Count II)*

The court likewise dismisses Plaintiff's claim for overtime pay under the District of Columbia's Minimum Wage Revision Act ("DCMWA"), D.C. Code §§ 32-1001 *et seq*. *See* Am. Compl. ¶¶ 38–41. The DCMWA and FLSA are to be "interpreted similarly." *See Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009) (citing *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1261 (D.C. Cir. 1972) (observing that the DCMWA was modeled after the FLSA). Accordingly, like Plaintiff's claim under the FLSA, Plaintiff's DCMWA claim must be dismissed because it fails to allege that Plaintiff worked more than forty hours in a given workweek.[6]

---

[6] Having so concluded, the court need not reach Defendant's argument that the DCMWA claim is "duplicative" of the FLSA claim. Def.'s Mem. at 7–8.

### 3. *Plaintiff's D.C. Wage Payment and Collection Law Claim (Count III)*

The court reaches a different conclusion with respect to Plaintiff's claim under the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1302. That statute provides that "[e]very employer shall pay all wages earned to his employees . . . ." *Id.* A plaintiff who prevails on a DCWPCL claim is entitled to, among other relief, unpaid wages and attorneys' fees. *See id.* § 32-1308(a).

Here, Plaintiff alleged sufficient facts to establish a plausible claim under the DCWPCL. As discussed above, the crux of Plaintiff's claim is that she routinely was not paid for the break-time hours that she worked. Part of the reason for such non-payment is that Defendant's "timekeeping procedures automatically assumed that everyone took the breaks." Am. Compl. ¶ 15. "This is the type of claim that the DCWPCL, by its plain terms, was intended to remedy." *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 287 (D.D.C. 2015). As in both *Ayala* and *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 6, 7 (D.D.C. 2010)—cases in which the courts sustained the plaintiffs' DCWPCL claims—Plaintiff here has alleged that Defendant improperly maintained its payroll records, resulting in Plaintiff performing work for which she was not properly compensated. *See Ayala*, 82 F. Supp. 3d at 287 (citing *Ventura*, 738 F. Supp. 2d at 7). Accordingly, she sufficiently pleaded a violation of the DCWPCL.[7]

### 4. *Plaintiff's Negligent Supervision Claim (Count IV)*

Finally, Defendant argues that Plaintiff has failed to plead a plausible claim of negligent supervision. *See* Def.'s Mem. at 10. That claim rests on the allegation that Plaintiff's supervisor,

---

[7] The court rejects Defendant's contention that the DCWPCL claim is "duplicative" of her FLSA claim. Def.'s Mem. at 9. The DCWPCL claim is for unpaid ordinary hourly wages, whereas the FLSA claim is for unpaid overtime wages. Moreover, the court does not understand Defendant's contention that, because the wages she has not been paid are the subject of a "bona fide dispute concerning the amount of wages due," they should not be addressed as part of this litigation. *See id.* at 10. Defendant does not defend that argument in its Reply Brief and, instead, contends that Plaintiff failed to state a claim, which the court addressed above. *See* Def.'s Reply at 15.

Neverson-Daniels, had it out for her and falsely accused her of discarding a patient's medications, which led to Plaintiff's termination. Am. Compl. ¶¶ 20–27. The only argument Defendant advances is that Plaintiff "provides no evidence [Defendant] had actual or constructive knowledge of the alleged incompetent behavior" of Plaintiff's supervisor "until after the termination of Plaintiff's employment." Def.'s Mem. at 10–11. But, as Plaintiff correctly points out, she did in fact allege Defendant's knowledge of Neverson-Daniels's negligent behavior. Plaintiff's Amended Complaint avers that she told Defendant's Human Resources Director, Jennifer Dupree, about Neverson-Daniels's "wrongful and fraudulent" conduct. Am. Compl. ¶ 48. Accordingly, Defendant's basis for dismissal is premised on a misreading of Plaintiff's pleading.

In its Reply Brief, Defendants raises two more reasons why Plaintiff's negligent supervision claim must be dismissed: (1) the D.C. Workers' Compensation Act, D.C Code § 32-1504, provides the exclusive remedy for an injury caused by the negligence of a co-worker, and (2) the claim "is merely a restyled wrongful discharge claim." Def.'s Reply at 15–16. The court, however, declines to consider either ground for dismissal, as Defendant raised them for the first time in its Reply Brief. *See Aleutian Pribilof Islands Ass'n*, 537 F. Supp. 2d at 12 n.5.

\* \* \*

To summarize, the court grants Defendant's Motion to Dismiss Plaintiff's claims under the FLSA and the DCMWA. The court, however, dismisses those claims without prejudice and will allow Plaintiff twenty-one days from this date to amend her complaint to attempt to assert plausible claims under the FLSA and the DCMWA. The court denies Defendant's Motion with respect to Plaintiff's DCWPCL and negligent supervision claims.

In the event Plaintiff does not attempt to amend her complaint, Plaintiff's only surviving claims would arise under District of Columbia law. Under those circumstances, the court will

decline to exercise supplemental jurisdiction over the state claims and remand this matter to the District of Columbia Superior Court. *See, e.g.*, *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 120–21 (D.D.C. 2014); *Zuurbier v. MedStar Health, Inc.*, 306 F. Supp. 2d 1, 7 (D.D.C. 2004).

## V.    CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion to Dismiss is granted without prejudice as to Plaintiff's FLSA and DCMWA claims and Defendant's Motion to Dismiss is denied as to Plaintiff's DCWPCL and negligent supervision claims.

Dated: November 3, 2016

Amit P. Mehta
United States District Judge