# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Irene Akinsinde,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 16-cv-00437 (APM) |
| **Not-For-Profit Hospital Corporation,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Irene Akinsinde is a former nurse at Defendant Not-For-Profit Hospital Corporation who was fired after 11 years of service. In this action, Plaintiff claims that her termination came about due to her employer's negligent supervision of her immediate supervisor, who had a personal vendetta against her. She also seeks payment of unpaid overtime wages under federal and District of Columbia law. Defendant has moved for summary judgment on all claims.

For the reasons discussed below, the court grants Defendant's motion as to Plaintiff's negligent supervision claim and her D.C. Wage Payment and Collection Law claim, and in part as to her claims for unpaid overtime wages under federal and District of Columbia law. Plaintiff may proceed to trial on her wage claims premised on unpaid 30-minute meal breaks, but not as to two 15-minute breaks per shift, as there is no dispute that Plaintiff received compensation for the latter time periods.

## II. BACKGROUND

### A. Factual Background

Plaintiff Irene Akinsinde is a licensed practical nurse, who for nearly 11 years worked in the psychiatric ward for Defendant Not-For-Profit Hospital Corporation, which does business as United Medical Center. *See* Def. Mot. for Summ. J., ECF No. 43 [hereinafter Def.'s Mot.], Def.'s Stmt. of Undisputed Material Facts [hereinafter Def.'s Stmt.], ECF No. 43-1 ¶¶ 1, 4–5, 105; Pl.'s Mem. in Opp'n to Def.'s Mot., ECF No. 45 [hereinafter Pl.'s Mem.], Aff. of Irene Akinsinde, ECF No. 45-3 [hereinafter Pl.'s Aff.], ¶¶ 2, 3. According to Plaintiff, while employed at United Medical Center, she worked eight-and-a-half-hour shifts. Def.'s Mot., Ex. 1, ECF No. 43-2 [hereinafter Def.'s Mot. Ex. 1.], at 14–15.[1] During each shift, she was afforded two 15-minute breaks and one 30-minute meal break. *Id*. at 13; Pl.'s Mem. at 1; Am. Compl. (Second), ECF No. 15 [hereinafter Compl.] ¶ 9. Due to chronic understaffing in the psychiatric ward, however, Plaintiff asserts she was unable to take these breaks and was not paid for this extra work. Pl.'s Aff. ¶¶ 26, 27. According to Plaintiff, this nonpayment occurred over the entirety of her employment. *Id.* ¶ 27.

It is undisputed that Plaintiff was the subject of a number of disciplinary actions during her employment. Def.'s Stmt. ¶¶ 69–75; Pl.'s Resp. to Def.'s Stmt., ECF No. 45-1 at 3 (questioning the veracity of the underlying complaints, but not contesting the disciplinary actions imposed). The grounds for these actions included tardiness, "a pattern of harassing and belittling behavior," failing to complete assigned work and fraudulently covering it up, and "rude and unprofessional" conduct. Def.'s Stmt. ¶¶ 69–75. Though Plaintiff does not contest the fact of these disciplinary actions, she insists that they "have to be taken with a large box of salt." Pl.'s Resp. to Def.'s Stmt.

---

[1] Because Defendant's Exhibit 1 contains both excerpts of Plaintiff's deposition transcript and deposition exhibits, when citing to evidence within Defendant's Exhibit 1, the court cites to the page number electronically generated by CM/ECF.

2

at 3. She asserts that her supervisor, Ms. Grea Neverson-Daniels, falsified the complaints and "pressured others to make false charges against [Plaintiff]." *Id*. Plaintiff claims that Ms. Neverson-Daniels harbored ill will towards her because of a romantic relationship that she had with Ms. Neverson-Daniels' late husband before they married. *Id*.

This unchecked animus, Plaintiff contends, led to her termination. On or about February 15, 2015, a patient filed a formal complaint against Plaintiff, alleging a pattern of unprofessional behavior. Def.'s Mot. at 22–23; Pl.'s Aff. ¶ 40. The complaint accused Plaintiff of yelling at the patient and—when the patient responded by refusing to take her medication—throwing the medication in the trash. Def.'s Mot. at 23; Pl.'s Aff. ¶ 40. Ms. Neverson-Daniels forwarded the complaint to higher-ups at the hospital and, after reviewing the complaint, a group of three supervisors, including Ms. Neverson-Daniels, decided to terminate Plaintiff. Def.'s Stmt. ¶¶ 103–104; Pl.'s Resp. to Def.'s Stmt. at 4–5 (conceding the firing but not the reason for it). Plaintiff was fired on March 9, 2015. Def.'s Stmt. ¶¶ 105–107; Pl.'s Resp. to Def.'s Stmt. (not disputing Def.'s Stmt. ¶¶ 105–107).

**B.     Procedural Background**

Plaintiff originally filed this case in D.C. Superior Court on February 17, 2016. *See* Notice and Pet. for Removal, ECF No. 1, at 1. After removal to this court, Plaintiff amended her complaint and asserted claims for: (1) violations of the Fair Labor Standards Act ("FLSA"), the D.C. Minimum Wage Revision Act, and the D.C. Wage Payment and Collection Law, arising from the failure to pay overtime wages; (2) negligent supervision; (3) fraud; and (4) intentional interference with prospective advantage. Am. Compl., ECF No. 6. Defendants filed a Motion to Dismiss, which the court granted in part. Mem. Op. and Order, ECF No. 11.

Plaintiff then filed a Second Amended Complaint, repleading only federal and District of Columbia wage claims and a negligent supervision claim. Compl. ¶¶ 29–54. Defendant moves for summary judgment on the grounds that: (1) Plaintiff's negligent supervision and District of Columbia wage claims are preempted by the federal Labor Management Relations Act ("LMRA"); (2) the undisputed record evidence does not support her negligent supervision claim; (3) there is insufficient evidence to support her federal and District of Columbia claims for unpaid overtime wages; and (4) her District of Columbia wage claims are actionable, if at all, only under the D.C. Minimum Wage Revision Act. *See generally* Def.'s Mot.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party would not bear the burden at trial on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor. *Id*. at 322–23.

In assessing a motion for summary judgment, the court considers all relevant evidence presented by the parties. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court looks at the facts in the light most favorable to the non-moving party and draws all justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986). If the court determines "no reasonable jury could reach a verdict in her favor," then summary judgment is appropriate. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). When ruling on a summary judgment motion, courts are "not to make credibility determinations or weigh the evidence." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

### A. Preemption Under the LMRA

The court begins with Defendant's assertion that Plaintiff's negligent supervision and District of Columbia wage claims are preempted by Section 301(a) of the LMRA, 29 U.S.C. § 185(a). *See* Def.'s Mot. at 4–8, 13–16. For reasons that will become apparent, the court addresses this argument only as to Plaintiff's District of Columbia wage claims. Defendant maintains, in short, that the wage claims are preempted because their resolution is substantially dependent on interpreting the collective bargaining agreement ("CBA") to which Plaintiff was bound as a member of a union. *See* Def.'s Mot. at 16 (asserting that evaluating those claims "would require extensive analysis of Plaintiff's hours worked, the specific day Plaintiff worked, the impact of holidays, shift differentials, and on-call pay, and the ultimate compensation Plaintiff received under the terms of the CBA"). The court disagrees.

As a general rule, "when a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the preemptive force of § 301 of the LMRA by casting the suit as a state-law claim." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). However, "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id*. (citing *Allis-*

*Chalmers*, 471 U.S. at 212). So, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988); *see also Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990) (holding claims are not preempted that "only 'tangentially' involve CBA provisions") (quoting *Allis-Chalmers*, 471 U.S. at 211).

Plaintiff's District of Columbia wage claims are not substantially dependent on analyzing the CBA. To be sure, the CBA does generally supply the rate of pay and it provides employees two 15-minute *paid* breaks. *See* Def.'s Mot. Ex. 1 at 99–100. But the trier of fact will not need to "interpret" such provisions to resolve Plaintiff's wage claims. For starters, those claims are dependent on determining (1) the number of unpaid hours worked in excess of a forty-hour work week, and (2) Plaintiff's rate of pay. There is no factual dispute as to the number of hours Plaintiff worked, as those hours are reflected in payroll records. *See, e.g.*, *id.* at 177–82. And the parties have not contested Plaintiff's rate of pay. Additionally, with respect to overtime wages, the CBA provides that "[t]ime and one-half pay shall be paid, *at the rate specified by applicable law*, for all hours worked in excess of forty (40) hours in a workweek." *Id.* at 101 (emphasis added). Thus, the overtime rate is expressly tied to District of Columbia law, not the CBA. Finally, as to the break periods, no "interpretation" is necessary to understand the CBA's provision of two *paid* 15-minute breaks during shifts of four or more hours—that term is clear, *see id.* at 99—and the CBA does not even address the 30-minute unpaid meal break. That latter policy is found in Defendant's internal "Pay & Time Keep Policy," not in the CBA. *Compare Id.* at 260 ("A half-hour without pay is allowed for mealtime. If an employee works at least six (6) hours, the supervisor assumes that a meal break was taken and .5 is subtracted from the total clocked hours.") *with id.* at 98–99 (no mention of the 30-minute unpaid lunch break entitlement). As these terms show, Plaintiff's

6

District of Columbia wage claims are "independent" of the CBA. *See Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 113 (4th Cir. 2014) (holding that state wage claims were not preempted where they "did not require interpretation of the CBA"); *cf. Bush v. Clark Constr. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003) (finding that Section 301(a) preempts plaintiff's state-law wage claims because "the claim is substantially dependent on terms of the CBA" and "the Court must construe the CBA to resolve the plaintiff's claim").[2]

Accordingly, the LMRA does not preempt Plaintiff's District of Columbia wage claims.

## B. Negligent Supervision

The court turns next to Plaintiff's negligent supervision claim. Defendant asserts that Plaintiff's claim fails because she has not (1) established the "applicable standard of care" of "licensed practical nurses in hospital psychiatric wards," a necessary precursor to demonstrating a breach of a duty of care; (2) come forward with any evidence of a breach; or (3) shown that any breach led to her termination. *See* Def.'s Mot. at 21–25. Separately, Defendant argues that the D.C. Workers' Compensation Act provides the exclusive remedy for injury caused by workplace negligence. *See id.* at 25–26.

The court concludes that Plaintiff's negligent supervision claim fails for a simple reason: in this context, Defendant owed Plaintiff no duty of care under District of Columbia law.[3] The D.C. Court of Appeals has strictly construed the tort of negligent supervision. "[A] common law claim of negligent supervision may be predicated only on common law causes of action or duties

---

[2] Defendant relies on cases where the pay rights at issue were *created* by the CBA and thus preempted by section 301. *See* Def.'s Mot. at 14–15 (citing *Anselmo v. West Paces Hotel Grp., LLC*, 2011 WL 1049195 (D.S.C. Mar. 18, 2011) (claim for accrued paid time off), and *Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996) (claim for unpaid vacation pay)). Here, by contrast, the right to one-and-a-half pay for overtime hours is firmly established as a matter of District of Columbia law.

[3] Plaintiff asserts that her negligent supervision claim rests only on District of Columbia law, and does not require reference to the CBA. *See* Pl.'s Mem. at 4, 6–8. For that reason, the court only looks to the common law of the District of Columbia to define the duty of care, and not to the CBA.

7

otherwise imposed by the common law." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007). The court in *Griffin* identified the five duties imposed on employers under the common law: (1) "the duty to provide a safe place to work," (2) "the duty to provide safe . . . tools[] and equipment," (3) "the duty to give warning" of certain dangers, (4) "the duty to provide a sufficient number of suitable fellow servants," and (5) "the duty to promulgate and enforce rules which make the work safe." *Id*. None of these duties are at issue in this case.

Without an applicable common law duty, Plaintiff must identify a common law cause of action upon which to base her negligent supervision claim. But there is none. Plaintiff asserts that her claim arises from a "continuous course of harassing conduct and false charges" by her supervisor, Ms. Neverson-Daniels; the "fail[ure]" of hospital supervisory staff "to properly supervise Ms. Neverson-Daniels in conjunction with the investigation of the baseless, defamatory accusations"; and, her "wrongful[] termination." Compl. ¶¶ 48, 51, 53. None of these alleged failures give rise to a common law tort. The only one that might conceivably apply is wrongful termination, but that cause of action is inapt in this case. In the District of Columbia, the tort of wrongful termination is narrowly construed and is available only where "the discharge violates 'a clear mandate of public policy.'" *District of Columbia v. Beretta, USA Corp.*, 872 A.2d 633, 645 (D.C. 2005) (en banc) (quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 164 (D.C. 1997)). Plaintiff presents no evidence to support a termination against public policy.

Given Plaintiff's failure to identify a common law duty or a common law tort upon which to base her negligent supervision claim, that claim fails as a matter of law. Accordingly, the court grants summary judgment in favor of Defendant on this claim.

C. **Wage Claims**

Plaintiff alleges nonpayment of overtime wages for work performed during (1) one 30-minute meal break and (2) two 15-minute break periods. Pl.'s Mem. at 1; Def.'s Mot. Ex. 1 at 14–15; Compl. ¶¶ 9, 17. The court first addresses each ground under both the FLSA and the D.C. Minimum Wage Act ("DCMWA"), *see Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 42 (D.D.C. 2016) (stating "[t]he DCMWA and FLSA are to be interpreted similarly") (internal quotations and citation omitted), and then addresses her claim under the D.C. Wage Payment and Collection Law.

1. *Unpaid Meal Breaks*

Defendant advances multiple reasons for why Plaintiff's wage claim for unpaid meal breaks fails: (1) Plaintiff has not met her evidentiary burden to show that she worked during meal breaks; (2) Plaintiff cannot show that Defendant knew she was working without pay during those times; and (3) the FLSA's statute of limitations bars any demand for unpaid wages older than two years. Def.'s Mot. at 28–41. The court rejects each of these arguments.

a. <u>Failure to Satisfy Her Burden</u>

"An employee who brings suit under [the FLSA] for . . . unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). However, this burden is lessened when, as here, the employer has not maintained proper records of wages and hours. *See id* at 687.[4] In that circumstance, an employee can carry out her burden if she

---

[4] Defendant asserts that it established a process for employees to record time worked during meal breaks, but Plaintiff failed to follow it. Def.'s Mot at 38–40. Defendant's corporate designee, Lamonica Threet, testified that when an employee worked during a meal break, the employee was to communicate that fact to her manager so that "a payroll check request form could be completed." Def.'s Mot, Ex. 2, Dep. of Lamonica Threet, ECF No. 43-3, at 13. Yet, Threet also stated that she could not say how the routine denial of meal breaks would be handled. *Id*. In addition,

"proves that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference*." *Id*. (emphasis added). Where a plaintiff can provide such evidence, the burden shifts to the employer "to come forward with evidence . . . to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Id* at 687–88.

Defendant first contends that Plaintiff has not satisfied her initial burden because she relies on no more than her own "self-serving" and "conclusory" testimony as proof. *See* Def.'s Reply, ECF No. 52, at 5–15. But the "self-serving" nature of Plaintiff's testimony does not necessarily invalidate its evidentiary value. "[E]vidence a party proffers in support of its cause will usually, in some sense, be 'self-serving.'" *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016). Such testimony is to be disregarded only if it "is so undermined as to be incredible." *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017) (citation omitted). This is most likely where testimony has been undermined "either by other credible evidence, physical impossibility[,] or other persuasive evidence that the [affiant] has deliberately committed perjury." *Id*. Here, by sworn affidavit, Plaintiff attests that during her entire tenure working for Defendant, she was required to work through her meal breaks. Pl.'s Aff. ¶ 26. She further states that she was "never paid or compensated for all of the hours that [she] worked through [her] lunch breaks during the entire time of [her] employment" with Defendant. *Id*. ¶ 27. The court cannot ignore or discount this evidence simply because it comes from Plaintiff. *See Burley v. National Passenger Rail Corp.*, 801 F.3d 290, 298 (D.C. Cir. 2015) ("We accept that a plaintiff's own firsthand observations of

---

Plaintiff attests that she understood the process to adjust time records was meant only to address mistakes in clocking in or out for the day, not working during meal breaks. Pl.'s Aff. ¶¶ 34, 35. Drawing all reasonable inferences in favor of the Plaintiff, the court finds that there remains a genuine dispute of material fact as to whether Defendant had a system of maintaining accurate records for work performed during meal breaks. Thus, drawing all inferences in favor of Plaintiff, the court presumes that there was no such system.

relevant facts are probative evidence, and that we must not set them aside merely because they come from a party who necessarily has a stake in the outcome.").

Defendant offers *no* evidence to rebut Plaintiff's sworn statement that she routinely performed uncompensated overtime work during her meal breaks. *See generally* Def.'s Mot. *and* Def.'s Reply. Instead, Defendant attempts to undermine her testimony in two ways. First, Defendant asserts that Plaintiff's affidavit is lacking because she failed to set forth with particularity the dates and specific times on which she worked and because she does not possess contemporaneous records reflecting unpaid breaks. Def.'s Mot. at 30 –31, 34. But Plaintiff, at least in this case, need not provide the detail upon which Defendant insists. "The remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687. Plaintiff here affirms that she was never paid for the hours she worked through her meal breaks *during her entire employment* with Defendant, and that she would "tell [her] supervisor *every day* that [she] could not take a lunch break." Pl.'s Aff. ¶¶ 27, 28 (emphasis added). Thus, Plaintiff claims that, as a matter of course, she worked during her meal breaks without compensation. Such persistent denial of overtime wages does not require her to enumerate the dates and times on which she worked without compensation to advance her claim. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, __, 136 S. Ct. 1036, 1047 (2018) (holding that where employees sought lost wages for time spent getting in and out of protective clothing each day, the employees should not be denied "any recovery on the ground that [they are] unable to prove the precise extent of uncompensated work . . .") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).[5]

---

[5] The two cases that Defendant cites to support its position are readily distinguishable. In *Holaway v. Stratasys Inc.*, the plaintiff employee "put forth contradictory and bare assertions of his overtime hours worked," including failing to "provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his

Second, Defendant asserts that Plaintiff's sworn statement should be disregarded as a "sham affidavit." Def.'s Reply at 5–12. "Virtually every circuit has adopted a form of the so-called 'sham affidavit rule,' which precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony." *Galvin v. Eli Lilly and Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (*quoting Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991)). "[F]or the doctrine to apply, 'the affidavit must *clearly contradict* prior sworn testimony, rather than clarify confusing or ambiguous testimony . . .'" *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160–61 (D.D.C. 2008) (quoting *Hinch v. Lucy Webb Hayes Nat. Training Sch.*, 814 A.2d 926, 930 (D.C. 2003) (emphasis added).

Here, Defendant points to multiple statements in Plaintiff's affidavit concerning her work during meal breaks, *see* Def.'s Reply at 7–10, but none "clearly contradict" her prior deposition testimony, *St. Paul Mercury*, 573 F. Supp. 2d at 160.[6] For example, Plaintiff says in her affidavit that she was compelled to work through meal breaks, but testified during her deposition that no supervisor ever instructed her *not* to record this time as time worked, that she never completed a Payroll Check Request Form to claim overtime for meal periods, and that she could not specifically

---

employment." 771 F.3d 1057, 1059–60 (8th Cir. 2014). In *Deloatch v. Harris Teeter*, the only evidence that plaintiff submitted to support his assertion of unpaid meal periods was a time log prepared by his lawyer, the accuracy of which the plaintiff could not confirm. As to other alleged uncompensated hours, the plaintiff in *Deloatch* claimed a specified number of days on which those hours were worked, but by and large could not identify the dates on which such work took place. 797 F. Supp. 2d 48, 56–57 (D.D.C. 2011). In this case, by contrast, the number of hours that Plaintiff worked per week (minus the meal breaks) and the days on which she worked is not in dispute. Thus, the unsupported time calculations present in *Holaway* are not present here. Likewise, the absence of personal knowledge found lacking in *Deloatch* is not an issue here, either.

[6] Defendant also identifies multiple purported conflicts between Plaintiff's affidavit and sworn deposition testimony as to her negligent supervision claim. *See* Def.'s Reply at 7–10. The court need not consider those in light of its granting of summary judgment in favor of Defendant on that claim.

identify dates and times on which she worked through meal breaks. *See* Def.'s Reply at 8. But there is no clear contradiction between these statements. Plaintiff truthfully could have worked during meal breaks, without documenting or understanding that she should document those hours. Additionally, Defendant protests that Plaintiff's affidavit contradicts her deposition testimony "that she was never denied a break." *Id.* But Plaintiff did not testify that she "was never denied a break;" rather, she testified that she was never denied the ability to *eat*, but supervisors urged her instead to "grab a bite as you walk along." Def.'s Reply, Ex. A, ECF No. 52-2, at 42. The court discerns no discrepancy in Plaintiff's statement that would warrant finding it a "sham affidavit."

The court therefore finds that Plaintiff has carried her burden of offering proof that she worked without compensation during meal breaks.

b. <u>Supervisor Knowledge</u>

To sustain her wage claims, Plaintiff also must come forward with evidence that her employer "[knew] or ha[d] reason to believe" that she worked in excess of 40 hours per week. 29 C.F.R. § 785.11; *see also Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 53 (D.D.C. 2006) (stating that "a plaintiff in an FLSA overtime action also must demonstrate . . . that the employer had knowledge, or should have had knowledge, of the overtime"); *Dinkel v. MedStar Health Inc.*, No. CV 11-998 (CKK), 2015 WL 5168006, at *9 (D.D.C. Sept. 1, 2015) (interpreting DCMWA to contain as an element of proof an employer's knowledge). Plaintiff can sustain her burden by showing that Defendant either had actual knowledge of the overtime hours worked or, through the exercise of reasonable diligence, could have learned of such work. *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388–89 (6th Cir. 2016). Whether an employer possessed the requisite knowledge is a question of fact. *See id.* at 391.

Plaintiff here avers that her employer had actual knowledge of her uncompensated work during meal breaks. She asserts that she would "tell [her] supervisor every day that [she] could not take a lunch break." Pl.'s Aff. ¶ 28. She further affirms that "Directors" responded to "requests for payment for meal breaks in the following ways: a. 'Get out of my face,' b. 'Why don't you eat at home before coming,' c. Supervisor indicated that she 'hadn't eaten[.]'" *Id*. ¶ 30. Finally, Plaintiff attests:

> I have gone to the Director of Payroll at the NFPHC and requested payment for hours worked during meal breaks. The Director explicitly told me that the hospital was not paying for meal breaks. The Director said "go back to your Director on the Unit and tell them to hire more employees so that you can take breaks." She further asked if I knew "how much money the hospital would lose if it paid for meal breaks." I went to my Unit Director and told her what the Director of Payroll had said to me. My Unit Director said that she "hires the staff but they don't want to stay."

*Id*. ¶ 32. Though these statements lack some precision—for instance, the actual names of the people with whom she had these conversations and when they occurred are not identified—they are sufficient at the summary judgment stage to create a genuine dispute of fact as to her employer's knowledge of her work during meal breaks.

Defendant offers several reasons why the court should hold otherwise. Two of these reasons are familiar. First, Defendant insists that Plaintiff's affidavit is "self-serving." Def.'s Reply at 23. But for the reasons already discussed, the court cannot ignore or discount Plaintiff's statements merely because they are in a sense self-serving. Second, Defendant again urges that Plaintiff's affidavit is a "sham" and cannot contradict her sworn deposition. But, once more, Defendant has not identified any clear contradiction between sworn statements. Defendant, for instance, claims that "Plaintiff admitted she never complained to anyone at the Hospital, other than the Union, and that she never filed a grievance over any alleged denied breaks or meal periods." *Id.* But Plaintiff's actual testimony was that she never "*filed* a complaint" about uncompensated

14

work during meal times, which is not at odds with the assertion that she complained orally to superiors. Def.'s Mot. Ex. 1 at 81–82 (emphasis added). Likewise, Defendant points to concessions that Plaintiff understood the importance of recording all time worked and yet did not complete paperwork to seek compensation for time worked on meal breaks, *see* Def.'s Reply at 8–9, but her affidavit clarifies that she did not understand the timekeeping system should be used for that purpose, *see* Pl.'s Aff. ¶¶ 34–35. There is no clear contradiction between these statements.

Third, Defendant maintains that Plaintiff cannot show knowledge because the hospital put in place a process for reporting uncompensated work time—completing a "Payroll Check Request Form"—but Plaintiff failed to follow that process. Def.'s Mot. at 35–38; *see also* Def.'s Mot., Ex. 2, Dep. of Lamonica Threet, ECF No. 43-3, at 10, 13. To support the proposition that an employee's failure to use established procedures to report unpaid overtime effectively immunizes an employer, Defendant relies primarily on *White v. Baptist Memorial Health Care Corp.*, Def.'s Mot. at 35–36, a case also involving unpaid meal breaks, 699 F.3d 869 (6th Cir. 2012). There, the Sixth Circuit held that, "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *Id*. at 876. *White* is not controlling for two reasons. For starters, there is a genuine dispute of fact in this case as to whether there was an "established process" for employees to claim compensation for worked meal breaks. *See* n.4, *supra*. Plaintiff, for her part, asserts that no one ever informed her that she could seek compensation for meal breaks by submitting a Payroll Check Request Form, Pl.'s Aff. ¶¶ 34–35, and Defendant points only to testimony, not a written policy, to support its position, *see* Def.'s Mot. at 38–39. This fact dispute cannot be resolved at this stage. Moreover, this case is factually distinct from *White*. There, the employer compensated the employee when she followed the

15

established procedure for the unpaid work, but not after she ceased doing so. *See White*, 699 F.3d at 876. No such fact is present on this record. Also, unlike in *White*, Plaintiff here has presented direct evidence that she complained to superiors about non-payment, including the hospital's Director of Payroll, yet was rebuffed. *Compare id.* ("White occasionally told her supervisors that she was not getting her meal breaks. But she never told her supervisors that she was not being compensated for missing her meal breaks") *with* Pl.'s Aff. ¶ 32 ("I have gone to the Director of Payroll at the NFPHC and requested payment for hours worked during meal breaks."). Therefore, even if Plaintiff did not follow an established policy, there remains a genuine dispute of fact as to whether her employer knew about her working during meal breaks yet did not pay her. Summary judgment in favor of defendant is therefore not warranted. *See Lynch v. City of New York*, 291 F. Supp. 3d 537, 550 – 51 (S.D.N.Y. 2018) (finding that employer did have knowledge of overtime where employees did not use the "CityTime" system to request overtime, but requested overtime from supervisors and were told by supervisors in some cases not to request overtime as they would not be paid); *Blakes v. Illinois Bell*, 75 F. Supp. 3d 792, 814, 817, 820 (N.D. Ill. 2014) (denying summary judgment where plaintiffs presented evidence that they had told supervisors about their unpaid overtime).

\* \* \*

Before moving on, the court cannot leave unaddressed Plaintiff's inadequate response to an interrogatory designed to elicit any communications she may have had with her employer about unpaid meal breaks. Defendant asked Plaintiff in Interrogatory No. 20 to "[d]escribe *with particularity* each and every communication [she had] with any current or former employee or agent of Defendant regarding the allegations . . . that Defendant did not permit [her] to take [meal breaks] and did not pay [her] for [this work.]" Def.'s Mot., Ex. 6, ECF No. 43-7, at 14 (emphasis

16

added). Plaintiff responded merely by cross-referencing her answers to earlier interrogatories, Interrogatories 1 and 2, which asked her generally to identify individuals with information related to her claims and with whom she had had conversations about her claims. *See id.* at 14–15. This response was wholly inadequate. It may even be inconsistent with her affidavit, which identifies certain communications with her "Supervisors/Directors," the "Unit Director," and the "Director of Payroll," but the court cannot say for certain because Plaintiff nowhere identifies the names of the people that held these positions. Although Plaintiff was required to identify "with particularity" relevant communications, she provided no particulars whatsoever.

To rectify the prejudice to Defendant, the court will require Plaintiff to reformulate her answer to Interrogatory No. 20. Additionally, the court will permit Defendant, within reason, to take additional discovery from Plaintiff or persons identified by Plaintiff as needed to prepare for trial.

c. <u>Statute of Limitations under the FLSA</u>

The FLSA generally provides a two-year statute of limitations. 29 U.S.C. § 255(a). However, where a violation is "willful" the plaintiff may commence suit up to three years after the cause of action accrues. *Id*. A violation is "willful" only if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Here, Defendant argues that the court should consider Plaintiff's claim of unpaid wages for only the two years before filing suit, because she has not marshalled any evidence to support a finding of "willfulness." *See* Def.'s Mot. at 40–41. The court disagrees. If the trier of fact were to credit Plaintiff's assertion that, on multiple occasions, she notified different hospital superiors about the persistent non-payment of overtime wages for meal breaks, *see* Pl.'s Aff. ¶¶ 30, 32, the trier of fact could conclude that Defendant

17

willfully disregarded its obligation to follow the law, *cf. Craig*, 823 F.3d at 391–92 (stating that determining whether an employer had requisite knowledge could involve credibility determinations and weighing of evidence). Accordingly, the court will permit Plaintiff to proceed on a willfulness theory under the FLSA.

### 2. Break Times

The court reaches a different conclusion with respect to Plaintiff's wage claim for work during the two 15-minute breaks per shift. Although Plaintiff alleged in her complaint that she worked during these periods without pay, *see* Compl. ¶¶ 9, 17, 29–43, the undisputed evidence is to the contrary. The CBA provides that "[s]ubject to patient care and operational needs, the Hospital will provide two fifteen-minute breaks to employees who are scheduled to work more than four (4) hours . . . *These breaks shall be considered as time worked*." Def.'s Mot., Ex. 1 at 99. Defendant produced Plaintiff's time and payroll records between January 2013 and March 2015, which showed that Plaintiff was paid for every 15-minute break during that time. Def.'s Mot. at 32; *see also* Def.'s Mot., Ex. 1 at 177–82. Plaintiff controverts none of this evidence. Thus, the court grants Defendant's Motion for Summary Judgment insofar as Plaintiff alleges that she was not paid for the two 15-minute break periods.

### D. D.C. Wage Payment and Collection Law

Finally, the court addresses Plaintiff's claim under the D.C. Wage Payment and Collection Law ("DCWPCL"), which Defendant argues must be dismissed because her exclusive remedy for unpaid overtime wages is under the DCMWA. *See* Def.'s Mot. at 27–28. For this proposition, Defendant relies on *Driscoll v. George Washington University*, in which the court held that the plaintiff could not proceed under both the DCMWA and the more expansive DCWPCL on the same set of facts, because to allow such parallel claims would "frustrate legislative intent—and

effectively render the DCMWA's restrictive provisions a nullity." 938 F. Supp. 2d 19, 23 (D.D.C. 2013); *accord Thompson v. Digicon Corp.*, 107 F. Supp. 3d 49, 51 (D.D.C. 2015).

This court need not decide whether the holding of *Driscoll* is correct, for Plaintiff does not quibble with it. Instead, she attempts to distinguish *Driscoll* on the ground that her claim is not only for nonpayment of overtimes wages, but also untimely payment of such wages. *See* Pl.'s Mem. at 11–12. This is a distinction without a difference in this case. The failure to pay overtime wages necessarily encompasses their untimely payment: If an employer has not paid overtime wages at all, it likewise has not paid them on time. Thus, the attempt to distinguish *Driscoll* is unavailing. As Plaintiff does not challenge the holding of *Driscoll*, i.e., that the DCMWA is the exclusive remedy for wage claims based on the same factual allegations, the court enters judgment in favor of Defendant on Plaintiff's DCWPCL claim.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part. Plaintiff shall reformulate her answer to Interrogatory No. 20 no later December 6, 2018, and the parties shall appear for a status conference on December 13, 2018, at 1:30 p.m.

Dated: November 29, 2018

Amit P. Mehta
United States District Judge